Miller *v.* Sauerbier.

---

ELIAS N. MILLER, trustee,

*v.*

HENRY SAUERBIER and others.

30   71
54L 346

A father, pending a compromise with his creditors, which included
a mortgage on his homestead, gave a prior mortgage thereon to his
daughter, to secure to her moneys alleged to have been advanced by
her, and also for her services rendered in his family.   The proofs as to
the character of the loans and services, and also as to her *bona fides*,
being unsatisfactory and contradictory, her mortgage was postponed to
that of the creditors.

Bill for relief.   On final hearing on pleadings and proofs.

*Mr. A. Q. Keasbey*, for the complainant.

*Mr. C. Borcherling, Jr.*, for the defendants.

THE CHANCELLOR.

This is a controversy between the holders of the second
and third mortgages over surplus money, the proceeds of
the sale of the mortgaged premises under foreclosure pro-
ceedings on the first mortgage.   The second mortgage is
held by Mrs. Kirchner, the daughter of the mortgagor,
Henry Sauerbier, to whom it was given in November, 1874
(it bears date on the 23d of that month), and the third,
dated on the 3d of December following, is held by Elias N.
Miller, trustee, to whom it was given by Sauerbier, in trust
for the creditors of the firm of William Bohler & Co., of
which Sauerbier was a member.   Miller insists that the

mortgage of Mrs. Kirchner is fraudulent as against the claims the payment of which his was given to secure, and that his mortgage is, therefore, entitled to priority over it. The master to whom the matter was referred, reported in favor of Mrs. Kirchner's mortgage. Miller excepted to the report, and the question between the parties is presented upon the exceptions.

The mortgage of Mrs. Kirchner was given under circumstances which, of themselves, challenge scrutiny and provoke suspicion. Her father had failed in business and was, at the very time when he gave her mortgage (which was for the sum of $7,000 and interest), engaged in the endeavor to secure a settlement with his creditors. On the 27th day of November, 1874, four days after the execution of her mortgage, he sent to his creditors a proposition for the settlement of their claims against him, which involved the giving of a mortgage, as security to them, on the premises covered by her mortgage. These premises were his homestead property. Negotiations for a settlement had been pending between him and them for some time previous to that date and prior to the time of the giving of the mortgage to Mrs. Kirchner. He made no mention of this mortgage to his creditors or their attorney, and, in fact, obtained a settlement from them through their ignorance of its existence, which he otherwise could not have obtained. Had they known of its existence, they would have proceeded against him in bankruptcy. During the negotiations for a settlement, the mortgage of the complainant was spoken of as the only mortgage on the property. Before the time when the mortgage to Mrs. Kirchner was given, and at an early stage of the negotiations, a search had been made or obtained by the attorney of the creditors as to the encumbrances on the property, which disclosed no mortgage except the complainant's, which was, in fact, then the only one upon it. No search was made afterwards, because of the reliance which was placed upon the good faith of Sauerbier. That during these negotiations, and but four days before the

Miller *v.* Sauerbier.

presentation to his creditors of his formal proposition for
settlement, which, as before stated, embraced (and it appears
to have been a very important element therein) the giving
of a mortgage, as security to his creditors, upon his home-
stead, he should have given to his daughter a mortgage upon
the property for $7,000 to secure loans made by her to him,
as they allege, about three years before that time, and for
which she neither had nor ever had had any security; nor
had she even had any evidence of the debt and money which,
as she says, he agreed to pay her for services rendered by
her in his family before she was married, part of them while
she was yet a minor, is, of itself, sufficient to urge to scru-
tiny and excite distrust.   Of the amount which Mrs. Kirch-
ner's mortgage was made to secure, $3,300 are alleged to
have been for money borrowed by her father from her
shortly after she was married (she was married February
16th, 1871, and the mortgage is dated November 23d, 1874),
and the rest, $3,700, is alleged to be for her compensation
for her services in his household while she was unmarried.
Up to the time when she, as she alleges, made application to
her father for the return of the money lent, she had never
asked him for it.   Why she applied to him for payment at
that time, when he was in negotiation with his creditors for
a settlement of their claims against him, does not appear.
She gives no reason at all for seeking payment.   She says
she did not know, before that time, of his embarrassment.
She further states that, when she asked him for the money,
he said he could not pay her, but would "give her a paper
for it," and that he then gave her the mortgage.   Although
she only asked for the money lent, $3,300, he gave her a
mortgage for $7,000.   She says, indeed, that the mortgage
was not only for the money lent, but also for what he had
promised her, but she did not apply to him for the latter.
He, as it appears from her testimony, when she applied to
him for repayment of the money lent, gave her a mortgage
upon his property not only for that money, but for $3,700
besides, which she had not asked him to pay.   Of the money

Miller *v.* Sauerbier.

lent, she had no written evidence. She had no written evidence of agreement to pay her for her services. Nor was there any statement or calculation made to ascertain what was due. How the amount was fixed at exactly $7,000 does not appear. After the mortgage was given, she gave no receipt or acquittance. It is noteworthy that the claim for money due her for her services is supported by no agreement. She testifies that, when she was seventeen years old, she was desirous of getting married, but her father induced her to refrain from so doing by the promise that if she would remain unmarried until she should have attained the age of twenty-five, he would give her $300 a year. She was his oldest child, and she says she continued to live in his family, as a member thereof, until she was married. Her step-mother had charge of the family. Mrs. Kirchner appears to have done domestic services in the family the same as the other children, and, like them, was supported there. Her father kept two servants, and she says that there was no change in the household management from the time of her childhood until she was married. The attempt to prove services as housekeeper was unsuccessful. It is enough, however, to say that she proves no agreement to pay for her services; and, for services rendered under such circumstances, in the absence of an express agreement, the law will imply no obligation on the part of her father to pay her. *Gardner's adm'r* v. *Schooley*, 10 *C. E. Gr.* 150, and cases there cited.

As to the alleged loans of money : She accounts for the possession of so much money by saying that part of it was received by her as wedding presents from her brother and her brothers-in-law (her husband's brothers) and the wife of one of them, and the rest was her small savings "by dollars." Her wedding presents were, she says, as follows : From one of her brothers-in-law, $1,000; from his wife, $500; from another brother-in-law, $500; from another, $350; from another, $150, and from her brother, $500; in all, $3,000. She says she never deposited this money in any bank nor

Miller *v.* Sauerbier.

with any person, but kept it herself in her own possession in bills, in envelopes, until she lent it to her father. There is, therefore, no corroboration of her statement from any depositary of the money. Nor does she even produce any of those who she says gave her the money, to corroborate her statement. The unusual character of these alleged wedding presents should, it would seem, have suggested the propriety of producing some evidence to corroborate hers. Her father never made even an entry in any book of the receipt of this money from her. It is noticeable that, in this controversy between her and her father's creditors, in which the *bona fides* of her claim is questioned, she has not attempted to show, except by her own testimony, the receipt by her of the money which she claims to have lent her father, nor does she offer any excuse for her failure so to do. She had no property, except these wedding presents and her small savings. In *First National Bank of Freehold* v. *Irons*, 1 *Stew.* 43, where the defendants alleged that the money with which the property in question was bought, was a gift, proof was adduced by the testimony of the giver and otherwise to establish the fact. Sauerbier, in his conversation with the attorney of the creditors, in the presence of one of the creditors, when inquired of as to the consideration of the mortgage, gave a different account of it from that given by Mrs. Kirchner. He said that the mortgage was given to her for $7,000 because he had promised to give each of his children that sum when they came of age, and he had so provided in his will, and he gave her the mortgage to secure to her the sum so promised.

It cannot be doubted that he intended a fraud on his creditors, to defeat and hinder them by means of the mortgage to her. It seems evident that, in taking the mortgage, she understood and participated in his design. She does not deny that she knew, when the mortgage was given to her, that her father was embarrassed by his debts. She says she did not know, before that time, that he had got into trouble about the brewery (Wm. Bohler & Co.), but neither

she nor her father says that when the mortgage was given to her she was not aware of the fact that he was in trouble with his debts and was about to mortgage his property for the benefit of his creditors. If the mortgage was taken by her with knowledge of her father's object to defeat or hinder his creditors, by means of it, in obtaining payment of their debts out of his property, it cannot avail her as against their claims, but it will be postponed to their debts. *Tantum* v. *Green*, 6 *C. E. Gr.* 364; *Metropolitan Bank* v. *Durant*, 7 *C. E. Gr.* 35. Her mortgage will be postponed to that of Mr. Miller.